UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOEY CHAN MA,

    Plaintiff,

v.

NANCY A BERRYHILL,

    Defendant.

Case No. 17-cv-05696-RS

**ORDER REMANDING FOR FURTHER PROCEEDINGS**

## I. INTRODUCTION

Plaintiff Joey Chan Ma appeals the decision of the Commissioner of Social Security (the "Commissioner") denying him disability benefits under the Social Security Act ("SSA"). An Administrative Law Judge ("ALJ") reviewed Ma's application and determined he was not disabled and thus not eligible for benefits. Upon consideration of the parties' cross-motions for summary judgment and for the reasons discussed below, the ALJ's decision is vacated and the matter is remanded for further proceedings consistent with this opinion.

## II. BACKGROUND[1]

Ma is a forty-nine-year-old male who stopped working in February 2008 after a work-related injury to his back in January 2008. Ma's initial magnetic resonance imaging ("MRI") examination in February 2008 revealed a large left parasagittal and proximal foraminal disc

---

[1] This synopsis is based on the certified administrative record ("AR").

herniation at the L5-S1 level with S1 nerve root compromise as well as probable compromise of lower left-sided sacral nerve roots. Since 2008, Ma's only work included the opening of a restaurant in 2010 with the help of a business partner and his sister. The restaurant failed shortly after opening in 2011.

In September 2011, Ma filed an application for disability insurance benefits, alleging disability beginning on February 11, 2008.[2] The SSA denied Ma's initial and reconsideration claims on March 5, 2013 and May 17, 2013, respectively. Ma timely requested a hearing before an ALJ, which was held on May 12, 2014. Ma testified along with vocational expert ("VE") Nancy Rynd. The ALJ denied Ma's claim in July 2014. Ma requested review of the decision by the Appeals Council, which vacated the ALJ's order and remanded the case for further consideration in December 2015.

Upon remand, the ALJ held a new hearing on January 6, 2017, at which Ma testified along with VE Steve Davis. Based on the hypothetical the ALJ provided at the hearing, the VE concluded Ma was not able to perform his past work, but was capable of performing two jobs in the Dictionary of Occupational Titles ("DOT"). The ALJ subsequently denied Ma's disability application on January 13, 2017. In his written opinion, the ALJ considered medical opinions from 10 doctors, including treating physician Anita Roth, M.D. The ALJ also considered opinions from examining psychologists William Hooker, Ph.D, Tania Shertock, Ph.D., and Stuart Pickel, M.D., along with examining physicians Jason Smith, M.D., John Karan, M.D., James Rhee, M.D., Robert Blau, M.D., Paul Slosar, M.D., and state agency psychological consultants L. Cattanach, Ph.D., and Phaedra Caruso-Radin, Psy.D. Ma's sister also testified and her opinion was assessed. Ma timely requested review by the Appeals Council but his request was denied. On October 3, 2017, Ma commenced this action seeking judicial review of the ALJ's decision.

---

[2] Ma's date last insured was March 31, 2014.

## III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review the Commissioner's final decision denying benefits under the SSA. An ALJ's decision to that effect must be affirmed if it is supported by substantial evidence and free of legal error. *Beltran v. Astrue*, 700 F.3d 386, 388 (9th Cir. 2012). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam). In determining whether a decision is supported by substantial evidence, the court must examine the administrative record as a whole, considering all the facts. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). If the evidence supports more than one rational interpretation, the court must defer to the ALJ's decision. *Id.* at 1258. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (internal quotation marks and citation omitted).

## IV. DISCUSSION

A person is "disabled" for the purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which is expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner must follow a five-step sequential inquiry. 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden rests on the claimant to prove: (1) he is not working; (2) he has a severe medically determinable impairment that is expected to last more than twelve months; and either (3) that impairment is severe enough to meet or equal an impairment listed as a priori disabling without further vocational-medical evidence; or (4) the impairment causes such functional limitations that he cannot do his past relevant work. 20 C.F.R. § 404.1520(a)(4)(i)-(iv).

If the claimant successfully proves he cannot do his past work, then the burden shifts to the Commissioner to show at step five that the claimant can perform other work that exists in

1  significant numbers in the economy; otherwise the claimant will be found disabled. *Bray v.*
2  *Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *see* 20 C.F.R.
3  § 404.1520(a)(4)(v). Moreover, if the claimant's impairment does not meet or equal a listed
4  impairment under step three, the ALJ must determine the claimant's residual functional capacity
5  ("RFC") and apply it during steps four and five to make a final disability determination.
6  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 (9th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4),
7  which describes the five-step process).

Following this five-step inquiry, the ALJ first determined that Ma had not engaged in substantial gainful activity since filing his application for benefits. (AR 20.) Proceeding to step two, the ALJ found that Ma suffered from severe impairments including lumbar spine degenerative disc disease and depressive disorder. (AR 21.) At step three, however, the ALJ ruled that Ma's ailments did not meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Appendix 1"). (AR 21.) The ALJ also determined that Ma had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a). (AR 22.) Specifically, the ALJ found that Ma can lift 10 pounds; can sit for six hours in an eight-hour day (one hour at a time); can stand and walk for two hours in an eight-hour day (30 minutes at a time); cannot work at heights, drive, or work around dangerous machinery; cannot do overhead reaching; and is limited to simple repetitive tasks. (*Id.*) At step four, the ALJ determined Ma was unable to perform any past relevant work. (AR 29.) At step five, the ALJ concluded, based on Ma's age, education, work experience, and RFC, there were jobs in the national economy that Ma could perform, and he therefore was not disabled. (AR 29-30.)

Ma now contends on appeal that: (1) the ALJ failed to consider adequately whether Ma's impairments met or equaled the impairments listed under Appendix 1 at step three. Ma further contends the ALJ's assessment of his RFC after step three was not based on substantial evidence and contained legal error. This mistaken RFC assessment resulted in the ALJ's incorrect determination at step five that Ma is not disabled. More specifically, Ma argues the ALJ improperly: (2) discounted the credibility of Ma's testimony as to his symptoms; and (3) rejected

the opinions of his examining psychologist, Dr. Shertock.  Ma's first two arguments are compelling and justify relief, while his third argument is unpersuasive.

### A. Listing 1.04

Ma first contends that the ALJ failed to consider adequately whether Ma's ailments met or equaled an impairment listed in Appendix 1 at step three.  Specifically, Ma asserts the ALJ failed to consider whether Ma's ailment met or equaled an impairment listed in section 1.04 of Appendix 1 ("Listing").  Listing 1.04 includes:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, supt. P, app. 1, § 1.04.  Before concluding a claimant's impairments do not meet Listing requirements, an ALJ must review relevant evidence.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  Then, the ALJ must adequately explain his evaluation of relevant tests and discuss the combined effects of the impairments.  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  If the ALJ finds the claimant's combined impairments met or equaled a condition outlined in the Listings, the claimant is presumed disabled.  20 C.F.R. § 404.1520(d).  If not, the ALJ must move to steps four and five and assess a claimant's RFC.  20 C.F.R. § 404.1520(e).  There is no requirement for an ALJ to cite every Listing that the claimant's impairments may meet or were considered.  *See Lewis*, 236 F.3d at 513.

Under step three, the ALJ only explicitly considered whether Ma's *mental* impairments met or equaled the criteria of a *separate* listing, Listing 12.04.  (AR 21.)  The ALJ did not consider any of Ma's physical impairments and whether they met or equaled the criteria of *Listing 1.04*.  The Commissioner argues that even though the ALJ did not discuss Listing 1.04 under step three, the ALJ discussed Ma's physical impairments while determining Ma's RFC and thereby

effectively concluded Ma's physical impairments did not meet or equal the criteria of Listing 1.04. This argument is unpersuasive.

In his RFC determination, the ALJ mentioned the February 2008 MRI that showed "probable lower left-sided sacral nerve-root compromise." (AR 23.) The ALJ also noted "positive straight leg raise with discomfort and back spasms, decreased range of motion of the lumbar spine…sensory impairment in the L5-S1 distribution…and absent patellar and ankle reflex on the left." (AR 24.) These impairments were taken from the reports of examining physicians. To disregard an examining physician's opinion, an ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" if that opinion is contradicted by another doctor, or "clear and convincing reasons" if it is uncontroverted. *Lester*, 81 F.3d at 830-31 (citation and internal quotation marks omitted).

In this case, no doctor contradicted the multiple reports that found Ma had a disc herniation at the L5-S1 level with S1 nerve root compromise. (AR 522-24 (Dr. Karan), 529-30 (Dr. Smith), 594-96 (Dr. Rhee), 650 (Dr. Blau), 828-29 (Dr. Roth).) Both an MRI examination and nerve conduction study from 2008 confirmed the same. (AR 531-34.) The examining physicians found either sensory or reflex loss, pain, or limitation of motion of the spine. Moreover, Dr. Karan recorded positive straight leg testing at 50 degrees with discomfort and back spasms. (AR 523.)

In the absence of a contradicting report, the ALJ must find "clear and convincing" reasons to reject the findings by examining physicians as evincing nerve root compromise and the concomitant strength and sensory ailments in Ma to meet the impairments under Listing 1.04. The ALJ did not do so. The ALJ acknowledged "[o]bjective findings on clinical examination were otherwise generally within normal limits, however, including . . . largely full muscle strength, including in the lower extremities, and intact reflexes and sensations." (AR 24.) The ALJ, however, then determined that "[o]verall, these findings, including some sensory and strength deficits, are consistent with limiting the claimant . . . ." (*Id.*) In other words, the ALJ discussed reports diagnosing Ma with impairments that would allow Ma to meet the criteria of Listing 1.04,

but failed to assess explicitly whether the reports detailing the impairments were credible. The ALJ simply proceeded to credit "some sensory and strength deficits" when determining the RFC.

Without a discussion of what sensory and strength deficits the ALJ found credible and why, there is no "clear and convincing" reason to reject the findings by examining physicians who diagnosed Ma with nerve root compromise and the necessary strength and sensory ailments to satisfy Listing 1.04. If Ma's impairments satisfy Listing 1.04, no RFC analysis is necessary and Ma is considered disabled at step three. Therefore, the ALJ's RFC discussion is simply not relevant to the step three determination without the ALJ discrediting the objective reports diagnosing Ma with the requisite impairments. Moreover, the ALJ's discussion here is mostly concerned with rejecting Ma's testimony. As discussed below, the ALJ's decision is also vacated on this point. Even if it were not, however, doubt regarding Ma's testimony does not rise to "clear and convincing" reasons to justify wholesale rejection of the objective medical evidence diagnosing a disorder of the spine. Ma's case must, therefore, be remanded for adequate consideration of whether the objective evidence shows Ma's physical impairments met the criteria of listing 1.04 under step three.

**B. Ma's Credibility**

Ma also argues the ALJ erred in finding Ma's subjective physical symptoms incredible, leading to an erroneous RFC assessment at steps three and four. Ma believes the ALJ misconstrued his testimony and that nothing in Ma's testimony or medical reports showed Ma could consistently report and perform in a work setting. Further, Ma believes the ALJ erred in finding Ma's compliance with a conservative treatment plan, including his refusal to pursue injections and surgery, and his use of a non-medically prescribed cane contradicted Ma's disability claim.

To reject a claimant's testimony, though, there must be either (1) "affirmative evidence showing that the claimant is malingering"; or (2) "clear and convincing" reasons for doing so. *Lester*, 81 F.3d at 834. With regard to prong one, courts generally only find malingering where there is strong evidentiary support for doing so. *See Mohammad v. Colvin*, 595 F. App'x 696,

697-98 (9th Cir. 2014) (finding evidence for malingering where there were three instances in which the claimant's symptoms "disappeared" upon arrival at an emergency room, an examining psychologist made a provisional malingering diagnosis, and another examining psychologist made a note to "rule-out" a malingering diagnosis); *see also Cha Yang v. Comm'r of Soc. Sec. Admin.*, 488 F. App'x 203, 305 (9th Cir. 2012) (finding a doctor's notation "to [rule-out] malingering" without a follow up on those suspicions did not constitute a clear and affirmative diagnosis). To satisfy prong two, the "clear and convincing" reasons must be supported by substantial evidence in the record. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

Here, the ALJ made no finding that Ma was malingering in regards to his physical symptoms. Indeed, the ALJ found that Ma's impairments could reasonably be expected to cause the alleged symptoms. (AR 23.) Ma's subjective symptoms included "chronic back pain radiating into the lower extremities to the feet . . . difficulty lifting, squatting, bending, standing, reaching, walking longer than five to 30 minutes at a time," and other movement issues. (*Id.*) There is no evidence that comes close to that relied upon by the court in *Mohammad* nor evidence comparable to the inadequate doctor's notation in *Cha Yang* to suggest malingering.

In the absence of affirmative evidence of malingering, the ALJ must find "clear and convincing" reasons supported by substantial evidence in the record to reject Ma's testimony. This he did not do. The ALJ found Ma's statements "concerning the intensity, persistence and limiting effects of [his] symptoms not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.*) To discredit Ma's subjective symptoms, the ALJ pointed to Ma's testimony on his ability to handle daily activities such as preparing meals, dusting, and light laundry. (AR 23-24.) Discounting Ma's physical limitations based merely on his daily activities, however, is inappropriate given that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603. Moreover, Ma's testimony suggested he was more physically limited than the ALJ believed. For example, the ALJ believed Ma's testimony showed he "was able to live alone and did not report any particular help in maintaining his

residence." (AR 24.) Ma testified, however, that he cannot clean his residence without his sister's help, and his sister prepared many of his meals for him. (AR 65.) He does not vacuum or sweep, and can only microwave food. (*Id.*) The evidence discussed by the ALJ falls short of a "clear and convincing" demonstration that Ma does not have the subjective symptoms alleged.

The ALJ also discredited Ma's symptoms by pointing to Ma's work as a "restaurant owner." (AR 26.) Ma's sister did the paperwork to open the restaurant, however, and Ma only went to the restaurant about every other day to mix sauces and check in on employees for a few hours. (AR 42-43.) Ma's activities at the restaurant show an ability to work, but not as a full-time employee. They only showed he could attend to a job a couple of days a week for a few hours at a time. This does not preclude Ma from disability as disability does not require the claimant to be "utterly incapacitated." *Fair*, 885 F.3d at 603. Further, the ALJ failed to show how "supervising employees" and stirring sauces for a couple of hours a day every two or three days discredited Ma's physical symptoms. While this may show Ma was able to work sedentary work part-time, for two or three hours at a time, it is not clear and convincing evidence Ma does not have the limitations he alleges. In other words, Ma's testimony on his level of activity as a restaurant owner is not inconsistent with his claimed limitations and should not bear on his credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ's reliance on Dr. Pickel and Dr. Hooker's psychological reports suggesting Ma's self-reported psychological symptoms are exaggerated, (AR 25), similarly are not "clear and convincing" evidence to discredit Ma's testimony about his physical symptoms. The ALJ stated that these reports "suggest[ed] a possible tendency to exaggerate symptoms and limitations." (AR 25.) Dr. Hooker's report "[did] not verify severe levels of physical malfunction . . . as suggested by the claimant's self reporting." (AR 662.) Dr. Hooker's report, however, did not state what physical pains Ma reported were not valid. It did state Ma's lower back pain "did not seem excessive or exaggerated." (*Id.*) Importantly, none of Dr. Hooker's observations were derived

ORDER REMANDING FOR FURTHER PROCEEDINGS
CASE NO. 17-cv-05696-RS

9

from any physical testing. As for Dr. Pickel's report, it noted exaggeration of only *psychological* symptoms. (AR 711.) There, Ma's physical symptoms including "constant back pain" were detailed and not called into question. (AR 696.) Again, there was no physical exam. In fact, no physician or physical exam has suggested Ma exaggerated physical symptoms. Without support from the record, Ma's suspected tendency to exaggerate psychological symptoms cannot constitute clear and convincing evidence to discount his testimony regarding his physical symptoms.

Finally, the ALJ used Ma's elected treatments to discredit his subjective symptoms. A claimant's complaints about disabling impairments may be discredited by a failure to seek or follow treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). The ALJ pointed to Ma's refusal of an epidural steroid injection, his refusal of surgery, and his use of a non-prescription cane as examples of failure to seek treatment. (AR 25.) Ma addressed his refusal to take an epidural shot, stating he was "scared" to take the shot and believed it was "invasive." (AR 71.) Indeed, the record shows the epidural shot brought risks of "bleeding, infections, numbness, headache, transient weakness and nerve injury" without guarantee of success. (AR 595.) The ALJ's failure to consider Ma's reasons for not seeking this form of treatment was error. *Cf. Fair*, 885 F.2d at 604 (noting "there may be claimants with good reasons for not seeking treatment"). Further, Ma *did* pursue treatment in other forms, such as taking Tylenol, Hydrocodone, Volteren and Norco for pain, (AR 67-68, 696), and attending physical therapy with Dr. Roth, (AR 708).

Likewise, the ALJ's suggestion that a lack of surgery reflected a lack of symptoms, (AR 25), was misguided. Only Dr. Smith noted surgery could be helpful if symptoms did not improve. (AR 529-30.) In a subsequent physical evaluation, Dr. Rhee acknowledged this observation and Dr. Smith's additional recommendation to maximize non-surgical options *first*. (AR 594.) Then, in 2015, Dr. Slosar recommended against surgery.[3] (AR 1054-56.) Without a recommendation

---

[3] Dr. Slosar's examination was outside of the relevant time-period. However, the recommendation against surgery pertained to Ma's pre-existing back injury, made worse by a motor vehicle accident in January 2015. If Dr. Slosar recommended against surgery after the impairment worsened, it is unreasonable to believe he would have recommended surgery before the car accident, and during the relevant time-period.

for surgery, a claimant can hardly be discredited for not having one. Finally, the ALJ's finding that a cane is not medically necessary did not merit great weight. (AR 26.) Nowhere in the record does Ma suggest the cane is medically necessary. Ma even admitted the cane is not medically necessary at his hearing. (AR 74.) A claimant should not be discredited because they use a cane simply for balance. Accordingly, the ALJ has not properly discredited Ma's testimony.

### C. Dr. Shertock's Report

Ma also argues the ALJ did not give appropriate weight to the opinion of Dr. Shertock, a consultative examining psychologist. Dr. Shertock diagnosed Ma with a marked impairment in his ability to adapt to changes in routine work-related settings. (AR 762.) During the hearing, the VE testified that a marked impairment in this area, along with Ma's other impairments, would preclude a claimant from any job opportunities in the current economy. (AR 56.) The ALJ, however, chose to give little weight to Dr. Shertock's opinion. (AR 28.) Instead, the ALJ relied on reports from examiners Dr. Pickel and Dr. Hooker, as well as non-examining consultants Dr. Cattanach and Dr. Caruso-Radin, to conclude Ma did not have a marked impairment in his ability to adapt to simple changes in routine work-related settings. (AR 25, 27-28.)

In evaluating medical opinions, an ALJ looks to a number of factors including examining relationship, treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, and other factors brought to the ALJ's attention. *See* 20 C.F.R. § 404.1527(c). As discussed above, the opinion of an examining physician, even if contradicted, may only be rejected after the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Here, Dr. Shertock is a contradicted examining physician. In her February 2013 report, she gave Ma a global assessment of functioning ("GAF") score of 55. (AR 762.) Dr. Shertock further diagnosed Ma with a marked impairment in his ability to adapt to changes in routine, work-related settings. (*Id.*) Dr. Shertock gave this rating based on a series of Ma's self-reported answers to questions detailed earlier in her report. (AR 760.) She believed Ma "put forth adequate effort and the results can be considered reasonably reliable." (AR 761.) No objective tests were used. Dr. Pickel, another examining psychologist, instead gave Ma a GAF of

ORDER REMANDING FOR FURTHER PROCEEDINGS
CASE NO. 17-cv-05696-RS

11

for surgery, a claimant can hardly be discredited for not having one. Finally, the ALJ's finding that a cane is not medically necessary did not merit great weight. (AR 26.) Nowhere in the record does Ma suggest the cane is medically necessary. Ma even admitted the cane is not medically necessary at his hearing. (AR 74.) A claimant should not be discredited because they use a cane simply for balance. Accordingly, the ALJ has not properly discredited Ma's testimony.

### C. Dr. Shertock's Report

Ma also argues the ALJ did not give appropriate weight to the opinion of Dr. Shertock, a consultative examining psychologist. Dr. Shertock diagnosed Ma with a marked impairment in his ability to adapt to changes in routine work-related settings. (AR 762.) During the hearing, the VE testified that a marked impairment in this area, along with Ma's other impairments, would preclude a claimant from any job opportunities in the current economy. (AR 56.) The ALJ, however, chose to give little weight to Dr. Shertock's opinion. (AR 28.) Instead, the ALJ relied on reports from examiners Dr. Pickel and Dr. Hooker, as well as non-examining consultants Dr. Cattanach and Dr. Caruso-Radin, to conclude Ma did not have a marked impairment in his ability to adapt to simple changes in routine work-related settings. (AR 25, 27-28.)

In evaluating medical opinions, an ALJ looks to a number of factors including examining relationship, treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, and other factors brought to the ALJ's attention. *See* 20 C.F.R. § 404.1527(c). As discussed above, the opinion of an examining physician, even if contradicted, may only be rejected after the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Here, Dr. Shertock is a contradicted examining physician. In her February 2013 report, she gave Ma a global assessment of functioning ("GAF") score of 55. (AR 762.) Dr. Shertock further diagnosed Ma with a marked impairment in his ability to adapt to changes in routine, work-related settings. (*Id.*) Dr. Shertock gave this rating based on a series of Ma's self-reported answers to questions detailed earlier in her report. (AR 760.) She believed Ma "put forth adequate effort and the results can be considered reasonably reliable." (AR 761.) No objective tests were used. Dr. Pickel, another examining psychologist, instead gave Ma a GAF of

United States District Court
Northern District of California

1    70 and did not believe Ma had a marked impairment in that area. (AR 711.) Importantly, Dr.
Pickel questioned the validity of Ma's tests relying on subjective reporting. (AR 25, 710.) These
concerns were similarly raised by examining psychologist Dr. Hooker. (AR 662.)

The ALJ produced specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Shertock's opinion. The ALJ stated the "extreme degree of limitations" in Dr. Shertock's report is based on the self-report of the claimant and is not entirely consistent with the claimant's prior reports of his daily activities. (AR 28.) Ma argues the ALJ committed legal error because psychological exams always have subjective reporting. Ma further contends he does not have a wide range of daily activities, and Dr. Shertock did describe specific limitations. Although psychological exams do have a subjective reporting aspect, Dr. Pickel and Dr. Hooker's respective reports specifically undermined any self-reporting on psychological symptoms by Ma. (AR 662, 710.) As discussed above, these reports noted Ma's tendency to exaggerate psychological symptoms. Likewise, Dr. Pickel and Dr. Hooker used an objective Rorschach test to diagnose Ma with mild depression. (AR 661, 709.) Dr. Shertock did not use any objective testing.

Dr. Shertock's reports on Ma's level of mental functioning were also inconsistent with the overall record. Inconsistencies with the claimant's level of daily activities is a basis for giving little weight to a psychologist's report. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). Here, Ma had the psychological capacity to attend school and be an absentee owner of a business for over a year. (AR 43-44, 616, 703, 711.) Further, Ma dealt with employee problems over the phone which showed he was responsible for dealing with problems in the restaurant whenever they came up. (AR 711.) These examples of mental functioning are inconsistent with Ma having a marked impairment in his mental ability to adapt to changes in routine, work-related settings that would preclude him from any work in the current economy. The ALJ provided "specific and legitimate" reasons supported by substantial evidence in the record to give little weight to Dr. Shertock's opinion of Ma's mental impairments.

## V. CONCLUSION

In sum, the ALJ did not adequately consider whether Ma's impairments met or equaled the criteria of Listing 1.04. The ALJ also did not provide adequate reasons for rejecting Ma's testimony in determining his RFC. Thus, the ALJ did not satisfy his burden at step three of properly considering all applicable listings, nor did he satisfy his burden at step five of properly weighing Ma's abilities in determining what work he is capable of doing. Accordingly, the ALJ's decision is vacated, and the matter is remanded for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

Dated: March 8, 2019

_____
RICHARD SEEBORG
United States District Judge